THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* VÍCTOR FLORES FLORES, Defendant and Appellant.

No. 15672. Argued November 8, 1954.—Decided December 22, 1954.

Santos P. Amadeo and Antonio J. Amadeo for appellant. José Trías Monge, Attorney General, and Rafael L. Ydrach Yordán, Acting Fiscal of the Supreme Court, for appellee.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

Appellant herein was sentenced by the San Juan Part of the Superior Court to serve an indeterminate sentence ranging from 20 years to life imprisonment in the penitentiary for the subsequent offense of grand larceny. In the brief submitted in support of his appeal [1] he maintains that such sentence is null and void on the ground that the court is without power to pronounce it. His contention is that Act No. 295 of April 10, 1946 (Sess. Laws, p. 758), as amended by Act No. 176 of May 4, 1949 (Sess. Laws, p. 552), which establishes the indeterminate sentence in our courts, in providing "That when the courts sentence a person to serve a term for a felony not entailing life imprisonment,

---

[1] In his report, the *Fiscal* of this Court urges dismissal of this appeal for want of jurisdiction, alleging that the prosecuting attorney of the trial court was not served with a copy of the notice of appeal. We have turned to consider the appeal on its merits, for, although the lack of notice to the prosecuting attorney—§ 350 of the Code of Criminal Procedure—produces the dismissal of the appeal taken, the convict in the case at bar appealed in his own right from the District Jail of San Juan, his petition having been approved by an officer of that institution as it appears from the judgment roll. While appellant was under the custody of the State, the failure to notify the prosecuting attorney was consented to by the former, since the intervention of an officer of the prison where he was confined made it the officer's duty, in the exercise of his supervisory functions, to transmit, or cause to be transmitted, to the prosecuting attorney a copy of the notice of appeal. *Cf. Huertas* v. *Warden,* 75 P.R.R. 359.

they shall pronounce an indeterminate sentence...," [2] ex-- cludes from its sphere of action not only the crime of murder in the first degree, for which the penalty of life imprison- ment is mandatory, but also those crimes in which said pen- alty, without being mandatory, may be fixed by the court in the exercise of its discretion.

■■ The case at bar involves an offense of grand lar- ceny which, in the absence of a former conviction punishable by imprisonment in the penitentiary, is punishable by im- prisonment in the penitentiary for a minimum term of one year and a maximum of ten—§ 430 of the Penal Code—but which, when there is such a former conviction, is punishable under § 56(1) of the said Code, in view of its subsequent character, by "imprisonment in the penitentiary not less than ten years." In the latter case the court could, before the effectiveness of the Act establishing the indeterminate sen- tence, impose on the person thus convicted, in the exercise of its sound discretion, the fixed penalty of life imprison- ment in the penitentiary. Does this state of our law prevail after the enactment of that Act?

A study of the legislation in question convinces us that the same excludes from its sphere of action only the crime for which the fixed penalty of life imprisonment is mandatory, but not that for which such penalty is discretionary with the trial court. When the Legislature fixed the penalty of life imprisonment in the Penal Code as the only punishment for a certain offense—murder in the first degree—it excluded

---

[2] Section 1 of said Act provides the following:

"The indeterminate sentence is hereby established in Puerto Rico; *Provided,* That when the courts sentence a person to serve a term for a felony not entailing life imprisonment, they shall pronounce an indeter- minate sentence which shall not contain a specific time limit but in no case the commitment shall be less that the minimum term provided by law for the offenses committed nor more than the maximum term indicated for said offense; *Provided, further,* That in the cases where the law does not provide for minimum or maximum terms, the trial court shall fix said minimum or maximum term."

all judicial discretion in the imposition of the penalty for that offense. But it did not do so for other offenses where it merely fixed the minimum penalty without fixing the maximum. In the latter cases, it left to judicial discretion the determination of the penalty to be fixed in each specific case. On the other hand, when it fixed the minimum penalty and the maximum penalty for other offenses, it restricted the exercise of judicial discretion within the limits prescribed by statute.

In cases like the one at bar, although the trial court could impose a fixed sentence of 10 years—minimum—before the effectiveness of the Indeterminate Sentences Act, it could also impose one of greater duration, including life imprisonment. Since this action does not involve any question relative to a change in the standards of the penalty to be imposed by an indeterminate sentence, which may adversely affect an accused who committed the crime before the enactment of said Act—see *People* v. *Emanuelli*, 74 P.R.R. 506—the theory that an indeterminate sentence is for the maximum term of the penalty imposed, *People* v. *Emanuelli, supra*, p. 519; *People ex rel Neville* v. *Ragen*, 72 N. E. 2d 175; *Ex parte Lee*, 171 Pac. 958, does not apply here, since by not fixing the maximum penalty for grand larceny, as a subsequent offense, the Code did not limit the power of the court to impose it, either before or after establishing the indeterminate sentence. In order to accomplish its objective and implement its provisions, the very Act that established it provided the manner in which, in cases like the present, the lack of a specific maximum term in the Code would be supplied, by authorizing the court to fix it. Since this case does not involve any impairment of rights acquired prior to its effectiveness, even if it is considered that the court, in fixing the maximum at life imprisonment, imposed on appellant herein a sentence for the maximum term of the penalty imposed—which theory prevails for all indeterminate

sentences—such action does not entail the juridical consequences attributed to it by appellant, for it only concerns the discretional action of a court, authorized by the statute itself, and necessary to enforce its own provisions.

The case of *Lee Lim* v. *Davis*, 284 Pac. 323, cited by appellant, is not applicable. There, the statute prohibited the imposition of indeterminate sentences in cases of murder, wherefore, even if first degree murder entailed a penalty ranging from 10 years to life imprisonment, it was necessary to impose a fixed penalty since that crime was expressly excluded from the sphere of action of the law. In our case, the law excludes the offense "entailing life imprisonment." As stated before, the offense excluded is that for which said penalty is mandatory. Thus, the purpose of the Act is not defeated but rather enhanced, according to its objective, as set forth in the Statement of Motives added thereto by Act No. 176, *supra*:

"In order that the penalty should serve its eminently social function of protecting society from the menace of offenders, it is absolutely necessary that the courts impose such sentences as permit the penal authorities two things: (1) be able to determine in each case where the menace of the offenders resides and (2) have sufficient time to eliminate said menace through a constructive treatment. For this purpose there must exist a direct relation between the duration of the sentence imposed and the problem of the offender.

"In order to further this end the indeterminate sentence is established in Puerto Rico, which, while permitting the imposition of sentences with a margin of reasonable fluctuation between the lowest possible minimum and the highest possible maximum that may be imposed, shall allow for a distinction to be made among the different offenders during the period of their confinement in jail and, as a consequence, these may regain their liberty as they evidence a favorable reaction to the process of their rehabilitation. This way we prevent, in the interest of a better service to the community, that the reformed offender be confined longer than necessary; and likewise, but conversely, that an offender be released while still a menace to the community.

"Society should devote the necessary time to control the conduct of the offender while he is in need of such control in order to reform. This can only be achieved by a sentence permitting the application of the convenient solutions to the cases arising. For this purpose the indeterminate sentence is established."

The judgment will be affirmed.